IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | ) <br> ) | CIVIL ACTION NO.: 1:10-cv-636 |
| Plaintiff, | ) <br> ) <br> ) | COMPLAINT |
| v. | ) <br> ) | |
| KOBEWIELAND COPPER<br>PRODUCTS, LLC, | ) <br> ) <br> ) | <u>JURY TRIAL DEMAND</u> |
| Defendant. | ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Joseph Cardwell who was adversely affected by such practices. Specifically, Plaintiff EEOC alleges that Defendant violated the ADA when it failed to hire Cardwell because it perceived him as disabled, in violation of Section 102(a) and (b)(1) of the ADA, 42 U.S.C. §12112.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant KobeWieland Copper Products, LLC, has continuously been a Delaware limited liability company doing business in the State of North Carolina and the City of Pine Hall, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Joseph Cardwell filed a charge with the EEOC alleging violations of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. On or about October 6, 2008, Defendant engaged in unlawful employment practices at Defendant's facility located in Pine Hall, North Carolina, in violation of Section 102(a) and (b)(1) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(1). As more fully described below, Defendant failed and refused to hire Cardwell because it perceived Cardwell as disabled.

9. Joseph Cardwell, who is currently 38 years old, injured his left hand when he was seven years old, resulting in anatomical loss to the fingers of his left hand. Cardwell's index finger was completely severed, while his thumb was severed below the second joint and his ring and pinky fingers were severed at or just below the first joint below the fingernail.

10. Cardwell has a long and consistent employment history since his graduation from high school. All of Cardwell's employment has involved manual labor and most has involved the use of heavy industrial equipment and tools, including but not limited to hammers, wrenches, crow bars, ladders, jackhammers, sledgehammers, and rakes.

11. On or about August 25, 2008, Cardwell applied for a maintenance mechanic position with Defendant. Defendant manufactures and sells copper tubing. Approximately one week after submitting his application, Cardwell was notified by Defendant that he was not selected for the maintenance mechanic position because of a lack of electrical experience, but that he would be considered for a position in

3

Defendant's casting department. Cardwell confirmed his interest in being considered for the position in the casting department.

12. Cardwell was qualified for the position in the casting department and advanced through Defendant's multi-phase hiring process which included a battery of testing; a one-on-one interview; and a post-offer medical examination. Cardwell successfully completed each phase of the hiring process. On or about September 24, 2008, Cardwell received a letter from Defendant's human resources and safety specialist confirming Cardwell's selection for a position with Defendant and instructing Cardwell to report at 7:00 a.m. on Monday, October 6, 2008 to begin employment.

13. Upon receiving confirmation of his hiring by Defendant, Cardwell resigned his position with his then current employer of thirteen years. Cardwell had been employed the last six years of his employment as an industrial boiler operator/mechanic.

14. Cardwell reported to Defendant's facility on the morning of October 6, 2008 and met with Defendant's human resources and safety specialist. Upon arrival, Defendant gave Cardwell paperwork to complete. While Cardwell was completing the paperwork, Defendant's human resources and safety specialist (hereafter "HR specialist") noticed that Cardwell was missing all or part of four digits on his left hand and asked Cardwell if he had disclosed this during his post-offer medical examination. Cardwell informed him that he had disclosed the lawn mower accident and the loss of all or part of four digits on his left hand. After confirming that Cardwell disclosed the information during the medical examination, Defendant's HR specialist informed Cardwell that Defendant could not hire Cardwell because of unspecified safety issues.

15. Cardwell responded that he could fulfill the job duties, explaining that he still had the remaining digits on his left hand and his palm to grasp and stabilize tools. Cardwell also offered to demonstrate that he could perform the work and suggested a probationary period to prove his ability to complete the job duties. Defendant's HR specialist refused all requests to allow Cardwell to demonstrate his ability to perform the essential job functions, insisting it was a safety issue. Defendant did no individualized assessment of Cardwell's capabilities.

16. Defendant regarded Cardwell as disabled, noting in Cardwell's employment file that Defendant was "unable to reasonably accommodate [Cardwell] in casting." Defendant perceived Cardwell as substantially limited in one or more major life activities as a result of his impairment.

17. Defendant denied Cardwell employment on the basis of this perceived disability. Cardwell's offer of employment was rescinded immediately after Defendant's HR specialist noticed Cardwell's left hand. There were no other grounds for the action.

18. Cardwell was qualified for the position in the casting department, as reflected by the fact that he passed all phases of the multi-phase hiring process and received a permanent offer of employment from Defendant. Cardwell was reporting for his first day of work when his offer was rescinded. Moreover, Cardwell could perform all essential job functions of the position in the casting department. Cardwell performed similar tasks and used many of the same or similar tools in his position with his previous employer as an industrial boiler operator/mechanic.

19. Based on information above, Defendant failed to hire Cardwell for a vacant full-time position in its casting department for which he was qualified because of a perceived disability resulting from his loss of fingers on his left hand. Defendant's actions are in violation of Section 102(a) and (b)(1) of the ADA, 42 U.S.C. §12112.

20. The effect of the practices complained of above has been to deprive Joseph Cardwell of equal employment opportunities and otherwise adversely affect his status as an employee because of a perceived disability.

21. The unlawful employment practices complained of above were intentional.

22. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Joseph Cardwell.

## PRAYER FOR RELIEF

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from any employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Joseph Cardwell by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place hiring of Cardwell.

D. Order Defendant to make whole Joseph Cardwell by providing compensation for past and future pecuniary losses resulting from unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make whole Joseph Cardwell by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional distress, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, damage to professional reputation and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Joseph Cardwell punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

This the 17th day of August, 2010.

    Respectfully submitted,

    P. DAVID LOPEZ
    General Counsel

    JAMES L. LEE
    Deputy General Counsel

    GWENDOLYN YOUNG REAMS
    Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M. Street, NE
Washington, DC 20507

/s/ Lynette A. Barnes
LYNETTE A. BARNES (NC Bar #19732)
Regional Attorney

TINA BURNSIDE (WI Bar # 1026965)
Supervisory Trial Attorney

/s/ Nicholas G. Walter
NICHOLAS G. WALTER (NC Bar #31849)
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Phone: 704.954.6472
Facsimile: 704.954.6412
E-mail: nicholas.walter@eeoc.gov

ATTORNEYS FOR PLAINTIFF